In the Matter of the Application of Dr. Clarence A. Bush and M. Darleen Bush for a License to Conduct and Operate a Nursing Home at Beach, North Dakota, in and on the Premises of the Building known as the Johnstone Memorial Hospital Situated at Beach, North Dakota.

Clarence A. BUSH and M. Darleen Bush, Petitioners and Respondents,

v.

NORTH DAKOTA HEALTH COUNCIL, DEPARTMENT OF HEALTH, Appellant.

No. 8142.

Supreme Court of North Dakota.

June 8, 1964.

Dakota Health Council took no formal action on such application and, more than nine months later, on June 10, 1963, the petitioners filed a written request for a hearing on their application. Thereafter, a notice of hearing was served on the petitioners, setting July 30, 1963, as the date for hearing. The notice further informed the petitioners that their application had not been acted upon favorably because:

1. The proposed nursing home does not comply with the provisions of Chapter 23–16, North Dakota Century Code; and

2. The proposed nursing home does not comply with standards set up by the North Dakota Health Council, Department of Health.

At the hearing before the North Dakota Health Council, it was disclosed that the facility for which application for license was made had been licensed and operated by the applicants as a general hospital from 1941 to 1962. Since medical hospitals and nursing homes are licensed under the same statute, the question arose as to whether the facility for which application for license was made, which formerly was operated by the applicants as a general hospital, was, in fact, a new facility or whether it was the same facility with a more limited scope of operation as to the type of patients that it would serve.

Section 23–01–03(4) of the North Dakota Century Code, originally enacted as part of Chapter 200 of the 1947 Session Laws, gives to the North Dakota Health Council the authority and power to provide for the development, establishment, and enforcement of basic standards for "hospitals and related medical institutions" which render medical and nursing care, such standards to cover matters pertaining to sanitation, building construction, fire protection, nursing procedures, and preservation of medical records. The statute then imposes the following condition:

"* * * provided no regulation shall be made as to building construction of

Wheeler, Daner & Glaser, Bismarck, and Dynes & Malloy, Dickinson, for petitioners and respondents.

Helgi Johanneson, Atty. Gen., John E. Adams, Asst. Atty. Gen., and Arnold O. Goplen and Wesley N. Harry, Sp. Asst. Attys. Gen., Bismarck, for appellant.

STRUTZ, Judge.

On or about the 21st day of August 1962, the petitioners made application to the North Dakota Health Council, Department of Health, for a license to operate a nursing home in Beach, North Dakota. The North

existing medical hospitals save in relation to safety factors."

After the hearing before the State Health Council, that body made its findings and conclusions and entered its order denying the petitioners the right to use the former hospital as a nursing home, and ordered all nursing home-type patients removed from the premises within ninety days after the date of such order. The applicants appealed to the district court of Golden Valley County from such order, and the appeal was heard on October 29, 1963.

From the record, it appears that, during the years 1941 through 1962, the facility had been operated by the applicants as a general medical hospital under license issued by the North Dakota Health Council. In 1962, a new medical hospital was opened in Beach, and the petitioners thereupon applied for a license to operate the old hospital as a nursing home. The State Health Council refused to grant them a license to operate the nursing home on the ground that the building does not comply with the standards and regulations which had been adopted by the Health Council during the time the facility was licensed as a medical hospital.

The trial court held that the law makes no distinction between a medical hospital and a nursing home; that both are considered as hospitals, and that but one type of license is provided for by law to be issued for hospitals and related medical institutions which render medical and nursing care. The court further found that the Health Council had produced no competent evidence to establish that the conditions objected to by the Health Council violated any regulations relating to health, sanitation, or disease control, and that the applicants were entitled to the license applied for. The court thereupon ordered the Health Council to issue the license.

From the judgment entered on this order, the Health Council has appealed to this court.

■ It may be stated generally that the preservation of the public health is a duty devolving upon the State as sovereign. 25 Am.Jur., "Health," Sec. 3, p. 287. The power to guard the public health may be delegated to subordinate governmental agencies, and such delegation may be in general terms. But where such delegation of power is in language which is clear and unmistakable, the power of such agency is limited by such delegation.

Section 23-16-01, North Dakota Century Code, the provision of law under which the facility was licensed as a medical hospital and under which the application for license to operate a nursing home was made, provides, in part:

"After July 1, 1947, no person, partnership, association, corporation, county or municipal corporation, or agency thereof, which maintains and operates organized facilities for the diagnosis, treatment or care of two or more non-related persons suffering from illness, injury, or deformity, or where obstetrical or other care is rendered over a period exceeding twenty-four hours shall be established, conducted, or maintained in the state of North Dakota without obtaining annually a license therefor in the manner hereinafter provided in sections 23-16-02 and 23-16-03."

The next section, 23-16-02, provides:

"Institutions subject to this chapter which are already in operation at the time of enactment of this chapter shall be given a reasonable time, not to exceed one year from the date of the enactment of this chapter, within which to comply with the rules, regulations and minimum standards provided for herein."

■ Any standards and regulations which were a part of the 1947 Act had to be complied with under Section 23-16-02 within one year after the date of passage

of the Act. This facility was licensed as a medical hospital from January 1948 through 1962. It cannot be disputed that the facility for which application for license now is made, if it satisfactorily complied with the regulations embodied in the 1947 law, must have complied with such regulations prior to 1962, since such compliance had to be within one year after January 1, 1948. Neither can it be argued that the institution did not exist prior to 1962. Chapter 23–01 of the North Dakota Century Code applies to "hospitals and related medical institutions which render medical and nursing care." The fact that a general hospital formerly was operated in the facility and that the medical hospital was moved to a new location, and that application immediately was made by the same parties who had operated the medical hospital for license to continue to operate the facility as a nursing home, does not make it a new facility. The Health Council made no showing of what rules, regulations, and minimum standards for hospitals and related medical institutions which render medical and nursing care had been established and existed prior to July 21, 1961. However, prior to that time, this facility had been licensed annually by the appellant and it must be presumed that there was full compliance with all rules and regulations.

Chapter 23–01 of the North Dakota Century Code applies to "hospitals and related medical institutions which render medical and nursing care," and the fact that the petitioners now propose to render a more limited service does not make the venture a new one under the provisions of the statute cited. The facility has been operated by the applicants under license of the North Dakota Health Council since 1941. It is the same facility which the North Dakota Health Council has licensed for twenty-one years as a medical hospital, the only difference being that the type of patients which the facility now proposes to serve is more limited. The contention of the North Dakota Health Council that this is a new

operation, since the use of the facility is to be more limited, cannot be sustained. The facility still comes under the designation of "hospitals and related medical institutions which render medical and nursing care."

Since this is a continuation of the same facility, it would be improper for the North Dakota Health Council to impose a different set of rules or standards for the facility when it operates as a nursing home than was required when it operated as a general hospital. And, since this is a continuation of an old facility, many of the regulations and standards which the North Dakota Health Council now is attempting to impose, which were not required when the same facility was licensed by the petitioners as a medical hospital, cannot be required under the law.

As we have pointed out, Section 23–01–03(4) of the North Dakota Century Code provides that "no regulation shall be made as to building construction of existing medical hospitals save in relation to safety factors." Therefore, any of the standards or regulations which were not required when the institution first was licensed as a hospital, but which the North Dakota Health Council now attempts to impose, cannot be legally required unless such regulations and standards can be resonably justified from a safety standpoint.

The appellant contends that the Legislature may change standards and regulations for a hospital, even after such hospital has been licensed. That might be true, but, under our present law, such changes may be imposed as to building construction only when they are reasonably necessary as safety requirements.

We have reviewed the regulations and standards which the Health Council now attempts to impose and which it has informed the petitioners must be met before a license will be issued to them for operation of the nursing facility. Many of these requirements have no connection with safe-

ty of the patients of the home. Any proposed changes which have no reasonable connection with safety of the patients are invalid and cannot be enforced. Each of the requirements of the Health Council must be tested on the ground of whether it is a reasonable safety requirement. The North Dakota Health Council therefore must re-examine carefully the standards and requirements which it has imposed, and only such changes in the standards and requirements which can reasonably be justified as necessary safety factors may be demanded. Further, the petitioners should be given a reasonable time in which to comply with such minimum changes in standards which will qualify as reasonable safety measures.

■ Let us now examine some of the standards and regulations which the Health Council has attempted to impose, to determine whether they can be justified as safety measures: the requirement that grab bars be provided on either side of the water closets; that nightlights be provided in all patient rooms; that a safety latch be provided on the elevator; that the clothes chute for soiled linen, which is immediately adjacent to the dumb-waiter used for transporting food, be so lined as to make it impossible for any germs, dust, or filth to seep from the clothes chute into the dumb-waiter; that the interior toilets have vents; that certain electrical deficiencies which present safety hazards be corrected; that fire extinguishers be provided and be kept in working order; and that exit doors be made to swing to the outside. All clearly are safety factors and can be legally required.

■ Some of the requirements are borderline, and might or might not be safety factors. One such requirement is that there be a telephone on the patient floor. This might be important if a call should be necessary to another part of the home in case of emergency, and we believe such requirement would be justified.

■ Other grounds for refusal to grant a license are not related to safety, such as patient corridors slightly narrower than new specifications, lack of administrative space or consultation room in the patient area, shortage of storage space per bed, lack of pantry on patient floor, five per cent deficiency in window areas, defective screens, certain substandard plumbing fixtures, and similar deficiencies. Only those requirements, regulations, and standards which reasonably involve safety factors may be made conditions precedent to the issuance of a license to the applicants for the operation of a nursing home in the facility.

Objection also was made to the fact that this facility is located across the street from a bulk oil plant. The record discloses that this is a brick building, with lath and plaster on the inside. However, the Chief Deputy State Fire Marshal admitted that there was no particular safety factor involved in the fact of its location because he testified:

"* * * the building is completely equipped with an automatic fire sprinkling system."

He then went on to testify:

"In the history of sprinkling system, to my knowledge, in a hospital, I don't know of a life being lost."

■ The authority of the North Dakota Health Council to provide changes in the standards and regulations affecting the building construction of existing medical institutions which render medical and nursing care is limited by the statute to such standards and regulations which involve safety factors. Many of the changes which the State Health Council has attempted to impose no doubt would be desirable and perhaps should be required in a new facility, but such changes in standards and regulations clearly cannot be enforced against existing institutions under our law.

The judgment appealed from is modified in accordance with the foregoing and, as

modified, the judgment of the district court is affirmed without costs to either party.

MORRIS, C. J., and ERICKSTAD and BURKE, JJ., concur.

TEIGEN, Judge (concurring).

I concur in the result but I feel the majority has construed the controlling statute too narrowly.

Section 23-01-03, N.D.C.C., specifically provides that the Health Council is empowered to establish rules and regulations for the maintenance of public health, including sanitation and disease control. It also states the Council may provide for the development, establishment, and enforcement of basic standards for hospitals and related medical institutions which render medical and nursing care. It is also authorized to provide standards for the construction and maintenance of such institutions. The standards which it may establish and enforce may cover matters pertaining to:

1. Sanitation;

2. Fire protection measures;

3. Nursing procedures;

4. Preservation of medical records; and

5. Building construction (provided no regulation shall be made as to building construction of existing medical hospitals save in relation to safety factors).

There is a clear legislative delegation of power to the Health Council to establish and enforce basic standards for hospitals and related medical institutions, which render medical and nursing care in all five of the above categories where a new hospital or nursing facility is being constructed. However, the legislature limited the power of the Council as to existing medical hospitals and provided that no regulation shall be made as to building construction save in relation to safety factors. However, its power in relation to the remaining four standards is the same for an existing facility as for a new facility.

I agree it was error for the Health Council to classify the existing institution as a new institution and that, for the purpose of being licensed to render nursing care, the legislative restriction as to building construction is applicable. However, I do not feel that the standards for an institution rendering medical care are necessarily the same as for an institution rendering nursing care and a double set of standards may be established, one for an institution rendering medical care and another for an institution rendering nursing care. Therefore, where an institution was licensed as a medical institution rendering medical care, it does not necessarily follow that it is eligible to be licensed as an institution to render nursing care, unless it complies with standards prescribed for that purpose, which standards are also subject to the restriction as to building construction.

The Health Council, following a hearing, found 48 deficiencies and irregularities in the light of established nursing home standards and regulations. Many of the described deficiencies involve building construction and many of them do not involve any of the five categories or areas in which the Health Council is authorized to establish standards. Their findings do not classify the deficiencies as being related to sanitation, fire protection, nursing procedure, preservation of medical records or building construction. The regulations and standards for an institution rendering nursing service have been revised from time to time since the adoption of the statutes, the last revision being to July 21, 1961. Section 1 thereof refers to type of service; Section 2 to management; Section 3 to physical plant; and Section 4 to administrative, medical, and nursing services. It appears that nearly all of the deficiencies listed in the findings of fact of the Health

Council come under the category of physical plant, which pertains to building construction. In view of our interpretation, this is subject to the restriction imposed by the legislature as to existing institutions.

For these reasons it appears the application was denied on grounds that are classified under the heading of "building construction" and grounds that appear to be outside the jurisdiction of the Health Council to impose.